IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

UNITED STATES OF AMERICA                                                              PLAINTIFF

v.                          Case No. 4:20-cr-00271-02 KGB

ORLANDO TONEY                                                                DEFENDANT

**ORDER**

Pending before the Court is separate defendant Orlando Toney's motion to suppress (Dkt. No. 52-1). The government responded in opposition to the motion, and Mr. Toney replied (Dkt. Nos. 63, 67, 68). The Court conducted a hearing on the motion at which the government and Mr. Toney presented evidence (Dkt. Nos. 94–97). Following the hearing, Mr. Toney submitted further briefing (Dkt. No. 101). The government advised the Court and Mr. Toney informally that it does not intend to file any further briefing; it stands on its response and arguments made at the hearing. This matter is ripe.

For the following reasons, the Court denies Mr. Toney's motion to suppress (Dkt. No. 52-1).

      **I.**      **Factual Background**

Mr. Toney challenges a law enforcement search of 375 Monroe Street, Apartment #324, Conway, Arkansas, on November 7, 2019.

            **A.**      **Arkansas Search Waiver**

The parties do not dispute that Mr. Toney had on file on November 7, 2019, an active Arkansas Community Correction Warrantless Search Waiver ("Arkansas Search Waiver") (Dkt. Nos. 52-1, at 6; 63-1). The language of the Arkansas Search Waiver provides, in pertinent part, that Mr. Toney agrees "to allow. . . any certified law enforcement officer[ ] to conduct a warrantless

search of [his] person, place of residence, or motor vehicle at any time, day or night, whenever requested by the . . . certified law enforcement officer." (Dkt. No. 63-1.).  It further states that Mr. Toney understands "that a warrantless search based on this waiver must be conducted in a reasonable manner but does not need to be based on a clearly expressed suspicion that [he is] committing or [has] committed a criminal offense." (*Id.*).

Mr. Toney maintains that "according to Carla Griswold, Mr. Toney's Arkansas parole officer, the place given as Mr. Toney's residence is 3752 Highway 64, in Menifee, Arkansas." (Dkt. Nos. 52-1, at 6; 67, at 4).  The government incorporates by reference all factual assertions set forth in the Witness Affidavit For Search Warrant submitted by Officer Kyle Krogman ("Officer Krogman's Affidavit"), with respect to Mr. Toney's residence:

> FACT #2:  On November 7, 2019, Investigator Hugen performed a search of Toney's name through our reporting system and located a report from September 12, 2019, that shows Orlando Toney's address as 375 Monroe Street #324 in Conway, Arkansas.  It should also be noted that Toney's driver's license, as of July of 2019, shows an address of 375 Monroe Street #324 in Conway, Arkansas.

(Dkt. No. 63-2, at 4).  Mr. Toney does not dispute in his filings that law enforcement had on file a report from September 12, 2018, that showed his address as 375 Monroe Street #324, Conway, Arkansas.  Mr. Toney also does not dispute in his filings that his driver's license as of July 2019 showed the address of 375 Monroe Street #324, Conway, Arkansas.  The Court observes that the Residential History report submitted by Mr. Toney shows that for 2018, 2019, and 2020, his address on file was 3752 Highway 64, in Menifee, Arkansas, which is inconsistent with the address reflected on his driver's license as of July 2019 (Dkt. No. 67, at 4).

In his filings, Mr. Toney represents that Apartment #324 was his mother Towana Bandsode's apartment and that Mr. Toney was present when the search warrant was executed at Apartment #324 on November 7, 2019 (Dkt. No. 52-1, at 1).  Mr. Toney also claims, in his

2

amended reply with no supporting affidavit, that he "had spent the previous night there" and that he "would visit his mother at this apartment frequently and certainly had permission to be there." (Dkt. No. 68).

Conway Police Department Officer Matthew Hugen testified at the hearing on the motion to suppress based on his familiarity with the facts and circumstances surrounding the search of Apartment #324 on November 7, 2019 (Dkt. No. 97). Officer Hugen explained that, in the northwest bedroom of that apartment, officers located on the wall a barber college certificate issued to Mr. Toney and found in the bedroom pieces of mail addressed to Mr. Toney at Apartment #324, an Arkansas identification card for Mr. Toney with the listed address as Apartment #324, and another identification card for Mr. Toney (Gov. Ex. 1–5). In addition, Officer Hugen testified that there were several items of men's clothing and other indicators that someone resided in that room. When the search warrant was executed on November 7, 2019, according to Officer Hugen, Mr. Toney was located in the northwest bedroom and arrested.

      **B.**    **Interactions With Law Enforcement On November 7, 2019, Prior To Issuance Of The Warrant**

Based on statements in Officer Krogman's Affidavit, Mr. Toney interacted with law enforcement officers prior to the execution of the search warrant on Apartment #324 on November 7, 2019, when Mr. Toney was a passenger in a parked vehicle with co-defendant Terrell Moses (Dkt. No. 52-1, at 8). Law enforcement was dispatched to 375 Monroe Street, Conway Arkansas, based on a complaint of a suspicious vehicle (*Id.*). When another officer made contact with Mr. Moses, who was the driver of the vehicle, that officer asked Mr. Moses to roll down the window, which Mr. Moses did by rolling down the window about two inches (*Id.*). At that time, the officer reported that he could smell the odor of marijuana coming from inside the vehicle (*Id.*). As a

result, the officer asked Mr. Moses to open the door of the vehicle, assisted Mr. Moses in doing so, and observed a bag of marijuana sitting on Mr. Moses' lap in plain view (*Id.*).

The officer then asked for the driver and passenger names (*Id.*). Mr. Moses provided a false name, based on Mr. Moses's previous encounters with law enforcement; began to fight with the officer as the officer attempted to detain Mr. Moses; and fled from the scene (*Id.*, at 8–10). Mr. Toney provided his correct name but also fled the scene during this encounter (*Id.*, at 10). A 40 caliber pistol magazine was recovered in the area where Mr. Toney ran off towards (*Id.*). The pistol was not located prior to the execution of the search warrant on Apartment #324 (*Id.*).

Another officer spoke with a resident of Apartment #333 and that resident advised that Mr. Moses was hiding in Apartment #333 (*Id.*). Law enforcement obtained and executed a search warrant at 375 Monroe Street, Apartment #333 in Conway, Arkansas (*Id.*).

After executing the search warrant at Apartment #333, officers "attempted to make contact at apartment #324 of Rock Creek Apartments with negative results." (*Id.*). "At this point, Officer Shumate stuck his nose up to the crease of the door and smelled." (*Id.*). Officer Shumate advised that he smelled the odor of marijuana coming from inside the residence, and Officer Krogman, the other officer on scene, confirmed what he was being told by sticking his nose up to the crease of the door and smelling (*Id.*). Officer Krogman also smelled the odor of marijuana coming from inside the residence (*Id.*).

### C. Search Warrant Issued November 7, 2019

The parties do not dispute that both Officer Krogman's Affidavit and the search warrant for 375 Monroe Street, Apartment #324 in Conway, Arkansas, were signed by an Arkansas state court judge (Dkt. Nos. 52-1, at 5; 63-2).

4

Mr. Toney admits in his filings that there is a staircase going up to Apartment #324 and that there is a common walkway (Dkt. No. 52-1, at 1).  He asserts that "[t]he common area does not lead to the front door of [Apartment] #324.  If a person was going to the apartment above [Apartment] #324, they would be approximately 8 feet from the front door of [Apartment] #324.  The same is true if they were going downstairs." (*Id.*).  Mr. Toney submitted for the Court's review a photograph taken from the door of 375 Monroe, Apartment #324 in Conway, Arkansas (Dkt. No. 52-1, at 11).  Mr. Toney also submitted additional photographs of this door at the hearing on the motion to suppress (Toney Ex. 1–5).

Officer found the following upon executing the search warrant at Apartment #375: marijuana in five different locations; 37 pills visually appearing to be ecstasy, which were later tested and found not to contain any controlled substances;  plastic bags in multiple locations; $574 cash; jars containing what appeared to be marijuana residue; a device for smoking marijuana; various drug paraphernalia in multiple locations; a tactical light made to fit onto a handgun; and a single 9mm Luger caliber cartridge containing the markings "R-P 9mm Luger" in a trashcan (Dkt. No. 62, at 1–2).

**II.   Overview Of Arguments**

Mr. Toney maintains that the police officers' sticking of their noses to the crease of the door of Apartment #324 and smelling was an objectively unreasonable search (Dkt. No. 52-1, at 2).  Mr. Toney asserts that the crease of the apartment door is curtilage (*Id.*, at 2–4).  He further asserts that the officers had no license to "smell the crease of the door."(*Id.*, at 3–4).  Throughout his briefing, Mr. Toney emphasizes that medical marijuana is legal in Arkansas and suggests the smell of it should not be a basis for probable cause to search, given that individuals could be smoking medical marijuana legally (Dkt. Nos. 52-1, at 5; 67, at 2).  Moreover, he maintains that

the Arkansas Search Waiver on file for Mr. Toney is not applicable in this case (Dkt. No. 52-1, at 6). For these reasons, and because he maintains that Officer Krogman's Affidavit was so lacking in probable cause as to render official belief in its existence entirely unreasonable, Mr. Toney seeks to suppress and exclude any evidence obtained from what he characterizes as an objectively unreasonable search (*Id.*, at 4–6).

The government asserts that the search of 375 Monroe Street, Apartment #324 in Conway, Arkansas, on November 7, 2019, was lawful because Mr. Toney had an active warrantless search waiver on file and because the officers conducted the search pursuant to a valid search warrant (Dkt. No. 63, at 1). The government argues that, if Mr. Toney disclaims residency at Apartment #324, he has failed to establish sufficient interest to claim Fourth Amendment protections in Apartment #324 and lacks standing to move to suppress this evidence (*Id.*, at 3). Alternatively, the government argues that, if Mr. Toney claims that he had an expectation of privacy in Apartment #324 due to his residency there, then the Arkansas Search Waiver applies and gives to law enforcement the right to search Apartment #324 (*Id.*, at 4). Regardless, the government maintains that officers did not violate the Fourth Amendment by conducting a "knock-and-talk" and including their observations regarding the plain smell of marijuana in Officer Krogman's Affidavit (*Id.*, at 4–7). Finally, the government argues that, even if the Court finds the Arkansas Search Waiver inapplicable and the search warrant deficient, the Court still should deny Mr. Toney's motion to suppress because the officers acted in good faith reliance on the warrant (*Id.*, at 8–11).

### III.     Legal Analysis

#### A.     Mr. Toney's Standing To Challenge The Search

The Fourth Amendment specifically provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

violated. . . ." U.S. Const. amend. IV.  "Fourth Amendment rights are personal rights which. . . may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978) (citations omitted); *Alderman v. United States*, 394 U.S. 165, 174 (1969) (citation omitted).  "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas*, 439 U.S. at 134 (citing *Alderman*, 394 U.S. at 174).  To seek relief for an unconstitutional search, a person must have a cognizable Fourth Amendment interest in the place searched, a concept often referred to as "standing." *Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018).

When evaluating Fourth Amendment standing, the Court must determine if an aggrieved individual "had a legitimate expectation of privacy in the area searched or the item seized." *United States v. Bettis*, 946 F.3d 1024, 1027 (8th Cir. 2020) (citations omitted).  The defendant in a criminal case bears the burden of establishing by a preponderance of the evidence that he or she has standing.  *Id.*  To meet this burden, the defendant must show that:  (1) "he himself asserted a subjective expectation of privacy in the place searched or object seized," and (2) "his subjective expectation of privacy is objectively reasonable." *United States v. Douglas*, 744 F.3d 1065, 1069 (8th Cir. 2014) (citation and internal quotations omitted).  A defendant who fails to prove a sufficiently close connection to the relevant places or objects searched has no standing to claim that they were searched illegally. *United States v. Anguiano*, 795 F.3d 873, 878 (8th Cir. 2015). When determining if a defendant has standing, the Eighth Circuit has considered factors including:

> ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case.

*United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994) (citing *United States v. Sanchez*, 943 F.2d 110, 113 (1st Cir. 1991)).

Mr. Toney disclaims residency at 375 Monroe Street, Apartment #324 in Conway, Arkansas, on November 7, 2019, based on the filings before the Court, but nonetheless maintains that he has standing to mount this Fourth Amendment challenge to the search of Apartment #324 in Conway, Arkansas, on November 7, 2019.  Mr. Toney represents in his filing, without sworn proof, that he was present at Apartment #324 when the search warrant was executed and that his mother resides at Apartment #324 (Dkt. No. 52-1, at 1).  Mr. Toney also represents in his amended reply, again with no supporting affidavit, that he "had spent the previous night there" and that he "would visit his mother at this apartment frequently and certainly had permission to be there." (Dkt. No. 68).  Mr. Toney has come forward with no record evidence to support the factors that inform this Court's analysis of standing; he only makes conclusory representations in his filings. The Court observes that Officer Hugen confirmed through testimony that Mr. Toney was present at Apartment #324 when the search warrant was executed and arrested in or near the northwest bedroom.

If Mr. Toney was an overnight guest in Apartment #324, he has standing to challenge the search of Apartment #324.  *Minnesota v. Olson*, 495 U.S. 91, 96–97 (1990) ("We need go no further than to conclude, as we do, that Olson's status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable.").

**B.     Search Waiver On File**

All parties agree that, on November 7, 2019, Mr. Toney had on file an Arkansas Search Waiver that provides, in pertinent part, that Mr. Toney agrees "to allow. . . any certified law

enforcement officer[ ] to conduct a warrantless search of [his] person, place of residence, or motor vehicle at any time, day or night, whenever requested by the . . . certified law enforcement officer." (Dkt. No. 63-1).  It further states that Mr. Toney understands "that a warrantless search based on this waiver must be conducted in a reasonable manner but does not need to be based on a clearly expressed suspicion that [he is] committing or [has] committed a criminal offense." (*Id.*).  *See also* Ark. Code Ann. § 16-93-106; *Clingmon v. State*, 620 S.W.3d 184 (Ark. Ct. App. 2021) (clarifying that searches under Arkansas Code § 16-93-106 do not require any reasonable suspicion).

Furthermore, law enforcement officers may stop and search parolees based upon search waivers, and there are several Supreme Court cases analyzing whether such searches and seizures are valid under the Fourth Amendment.  *See, e.g.*, *Samson v. California*, 547 U.S. 843 (2006); *United States v. Knights*, 534 U.S. 112 (2001); *Griffin v. Wisconsin*, 483 U.S. 868 (1987).  Mr. Toney cites no authority that states the residence to which the Arkansas Search Waiver applies is solely limited to the residence on file with Arkansas Community Correction, despite objective evidence regarding the individual's living situation, and the Court is aware of no such authority.

Admittedly, on the record before it, the Court has limited evidence to evaluate ownership, possession, or control by Mr. Toney; the historical use by Mr. Toney of the property or items seized; the ability of Mr. Toney to regulate access to the premises; or the existence or nonexistence of a subjective anticipation of privacy by Mr. Toney.  Here, there is record evidence in Officer Krugman's Affidavit that:

> FACT #2:  On November 7, 2019, Investigator Hugen performed a search of Toney's name through our reporting system and located a report from September 12, 2019, that shows Orlando Toney's address as 375 Monroe Street #324 in Conway, Arkansas.  It should also be noted that Toney's driver's license, as of July of 2019, shows an address of 375 Monroe Street #324 in Conway, Arkansas.

(Dkt. No. 52-1, at 10). Officer Hugen also testified as to the items located in the northwest bedroom of Apartment #324 that indicate Mr. Toney resided in Apartment #324 and that Mr. Toney was located there during the execution of the warrant and arrested.

Based on all of the record evidence before the Court, the Court concludes that it was objectively reasonable for a law enforcement officer to believe that Mr. Toney resided at 375 Monroe Street, #324, in Conway, Arkansas, on November 7, 2019.

### C.    Probable Cause And The Good Faith Exception

The government also encourages this Court to make a determination that probable cause existed for issuance of the warrant. Mr. Toney maintains that a Fourth Amendment violation occurred and that the officers lacked probable cause. The Court understands Mr. Toney to challenge Officer Krogman's Affidavit on the basis that the officers' behavior in smelling the crease of the door and in reporting the odor of marijuana was an objectively unreasonable search and that, therefore, the affidavit in support of search warrant was based on a Fourth Amendment violation.

Even if this Court were to assume without deciding for purposes of resolving the motion to suppress only that the warrant executed November 7, 2019, lacked probable cause and was based upon a Fourth Amendment violation, that does not automatically result in the suppression of evidence obtained during the execution of the search warrant. "Before 'reviewing the existence of probable cause,' this court 'may consider the applicability of the good-faith exception to the exclusionary rule,'" which permits evidence obtained in reliance on an "objectively reasonable" warrant. *United States v. Addidas Williams*, 976 F.3d 807, 809 (8th. Cir. 2020) (quoting *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007)).

10

In other words, the "exclusionary rule is not applied in cases 'when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.'" *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011) (quoting *United States v. Leon*, 468 U.S. 897 920 (1984)). "In cases of good faith, the evidence, although seized pursuant to a warrant that lacked probable cause, nonetheless is admissible at trial." *Id.* The good-faith exception applies unless the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S at 923.

*Leon* identified four circumstances in which an officer's reliance on a warrant is not in objective good faith:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned her judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*United States v. Proell*, 485 F.3d 427 (8th Cir. 2007) (citation and internal quotations omitted). "Entirely unreasonable is not a phrase often used by the Supreme Court, and we find nothing in *Leon* or in the Court's subsequent opinions that would justify our dilution of the Court's particularly strong choice of words." *United States v. Ross*, 487 F.3d 1120, 1122–23 (8th Cir. 2007).

The Fourth Amendment to the United States Constitution says that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. As a result, the Fourth Amendment establishes two requirements: (1) particularity and (2) probable cause. *United States v. Swift*, 720 F. Supp. 2d 1048, 1055 (E.D. Ark. 2010) (internal quotations omitted).

11

An affidavit supporting a search warrant is presumed to be valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). The Court does not understand Mr. Toney to request a *Franks* hearing in this matter, and the Court conducted no such hearing on his motion. Moreover, absent "a strong initial showing of deliberate falsehood or reckless disregard of the truth," a request for a *Franks* hearing must be denied. *United States v. Freeman*, 625 F.3d 1049, 1052 (8th Cir. 2010) (citation omitted). Mr. Toney has not alleged that Officer Krogman, who swore out the affidavit, knowingly and intentionally included a false statement or made one in reckless disregard of the truth. Further, there is no allegation that the issuing judge wholly abandoned the judge's role.

Instead, here, Mr. Toney maintains that "the affidavit in support of the warrant was so lacking in probable cause so as to render official belief in its existence entirely unreasonable." (Dkt. No. 52-1, at 5). The Court determines that Mr. Toney has failed to present sufficient evidence suggesting that the facts contained in Officer Krogman's Affidavit were disconnected from the crimes alleged, the place to be searched, or the evidence sought, such that belief in those facts was "entirely unreasonable."

As an initial matter, Mr. Toney fails to address his encounter with law enforcement recited in Officer Krogman's Affidavit. Courts have previously held that flight from law enforcement is a relevant factor in any probable cause determination. *See, e.g.*, *United States v. Datcu*, 627 F.3d 1074, 1078 (8th Cir. 2010); *United States v. Parish*, 606 F.3d 480, 487 (8th Cir. 2010); *United States v. Velazquez-Rivera*, 366 F.3d 661, 665 (8th Cir. 2004). Probable cause may also be established by the observations of trained law enforcement officers and by circumstantial evidence. *See United States v. Searcy*, 181 F.3d 975, 981 (8th Cir. 1999) (citing *Walden v. Carmack*, 156 F.3d 861, 870 (1998), and *United States v. Edmiston*, 46 F.3d 786, 789 (8th Cir. 1995)).

Prior to the search warrant being obtained and executed, Mr. Toney was a passenger in a vehicle about which law enforcement received a suspicious vehicle report. When law enforcement approached the vehicle, they smelled marijuana and observed marijuana in plain view in the vehicle. When law enforcement attempted to arrest the driver, the driver fought with law enforcement, and both the driver and Mr. Toney, who had been a passenger in the vehicle, fled from law enforcement. A .40 caliber magazine was found in the direction Mr. Toney fled, but the firearm was not located at that time. The Court takes these facts into account when assessing whether the warrant issued in this case was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

In his filings, Mr. Toney focuses on the officers' reporting the odor of marijuana and behavior in smelling the crease of the door to support his argument that a Fourth Amendment violation occurred. First, as to the officers' reporting the odor of marijuana, Mr. Toney asserts that this report was not reasonable given that Arkansas authorizes the use of medical marijuana to authorized users. *See* Ark. Const. Amend. 98-3. Mr. Toney asserts that law enforcement "did not know if anyone inside was smoking medical marijuana legally." (Dkt. No. 52-1, at 5).

In its response, the government cites the "plain smell" doctrine. "The Supreme Court has recognized that the odor of an illegal drug can be highly probative in establishing probable cause for a search." *United States v. Caves*, 890 F.2d 87, 90 (8th Cir.1989) (citing *Johnson v. United States*, 333 U.S. 10, 13 (1948)). In numerous cases, the Eighth Circuit has held that the smell of marijuana coming from a vehicle supports probable cause to search for drugs. *See United States v. Williams*, 955 F.3d 734, 737 (8th Cir. 2020) ("the odor of marijuana provides probable cause for a warrantless search of a vehicle under the automobile exception"); *United States v. Smith*, 789 F.3d 923, 929 (8th Cir. 2015); *United States v. Winters*, 221 F.3d 1039, 1042 (8th Cir. 2000);

*United States v. Peltier*, 217 F.3d 608, 610 (8th Cir. 2000); *United States v. McCoy*, 200 F.3d 582, 584 (8th Cir. 2000).  The Eighth Circuit has also permitted the search of residences based on law enforcement's reported smell of marijuana, among other factors, to establish probable cause.  *See United States v. McIntyre*, 646 F.3d 1107, 1115 (8th Cir. 2011) (describing the "strong odor of marijuana outside the garage" of the residence as a factor in establishing probable cause).

At the hearing, the government also noted correctly that marijuana remains illegal under federal law.  Mr. Toney does not dispute this.

Moreover, this case does not present a circumstance where law enforcement reports in isolation the smell of marijuana coming from a residence in Arkansas as a basis to seek a search warrant for the residence.  Here, there is evidence of Mr. Toney's prior interaction with law enforcement on the day of the search.  Further, there is no evidence in the record that, when confronted earlier by law enforcement in the vehicle, the driver or Mr. Toney asserted that they were authorized users of marijuana or that the marijuana present in plain view in the vehicle with them was medical marijuana either one or both was authorized to possess.  Instead, when confronted by law enforcement while in the vehicle, the driver resisted and fled, and Mr. Toney fled from law enforcement, possibly dropping a .40 caliber magazine in the process.  Mr. Toney presents no record evidence to refute these facts reported in Officer Krogman's Affidavit.

Officer Krogman's Affidavit also cites a basis to believe reasonably that Mr. Toney resides at Apartment #324 where the officers initiated the knock-and-talk and for which the officers sought the search warrant.  There is record evidence that:

> FACT #2:  On November 7, 2019, Investigator Hugen performed a search of Toney's name through our reporting system and located a report from September 12, 2019, that shows Orlando Toney's address as 375 Monroe Street #324 in Conway, Arkansas.  It should also be noted that Toney's driver's license, as of July of 2019, shows an address of 375 Monroe Street #324 in Conway, Arkansas.

(Dkt. No. 52-1, at 10). As explained in this Order, based on the record evidence before the Court, the Court concludes that it was objectively reasonable for a law enforcement officer to believe that Mr. Toney resided at 375 Monroe Street, #324, in Conway, Arkansas, on November 7, 2019.

With respect to the officers' behavior of smelling the crease of the door, Mr. Toney essentially argues that this conduct was a warrantless search not permitted by the Fourth Amendment because the crease of the door of Apartment #324 constitutes curtilage protected by the Fourth Amendment. The Fourth Amendment of the United States Constitution guarantees the right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. "It is a 'basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (quoting *Groh v. Ramirez*, 540 U.S. 551, 559 (2004)). The area "immediately surrounding and associated with the home," the curtilage, is "part of the home itself for Fourth Amendment purposes." *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984)).

"[T]he extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." *United States v. Brooks*, 645 F.3d 971, 975 (8th Cir. 2011). Four factors are relevant to whether a particular area should be considered within the curtilage:

> the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

*Id.*, 645 F.3d at 975. *See Fla. v. Jardines*, 569 U.S. at 6 ("This right would be of little practical value if the State's agents could stand in a home's porch or side garden and trawl for evidence with impunity; the right to retreat would be significantly diminished if the police could enter a man's property to observe his repose from just outside the front window"); *Brooks*, 645 F.3d at

975 (holding that a shared backyard and stairwell to a multiunit building were not curtilage as there was no "generalized expectation of privacy"); *United States v. Gerard*, 362 F.3d 484, 487 (8th Cir. 2004) (holding that a freestanding garage was not curtilage for Fourth Amendment purposes).

"Whether a seizure occurs is a question of law." *United States v. Dixon*, 51 F.3d 1376, 1379 (8th Cir. 1995). The Eighth Circuit has recognized a "knock-and-talk" exception to the Fourth Amendment's warrant requirement which permits "a police officer not armed with a warrant [to] approach a home and knock." *United States v. White*, 928 F.3d 734, 739 (8th Cir. 2019) (citing *Jardines*, 569 U.S. at 8). This exception "is founded on the implicit license all of us, including law enforcement officers, enjoy to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Id.* (internal quotations omitted). Further, shared space may prevent a finding that an area is curtilage for Fourth Amendment purposes. *See Brooks*, 645 F.3d at 975.

The government argues, and this Court agrees, that law enforcement approached the door of Apartment #324 initially to conduct a knock-and-talk. This is supported by statements in Officer Krogman's Affidavit (Dkt. No. 52-1, at 10).

The government also cites to the Court controlling Eighth Circuit Court of Appeals cases that recognize the plain smell doctrine as providing a basis for probable cause to search a residence during an attempted knock-and-talk. *See United States v. Smith*, 990 F.3d 607, 612 (8th Cir. 2021); *United States v. White*, 928 F.3d 734 (8th Cir. 2019). Here, law enforcement approached a door in the common walkway of a multi-unit apartment complex to conduct a knock-and-talk and smelled the odor of marijuana by reliance on their senses. Law enforcement objectively were lawfully present on the curtilage to conduct the knock-and-talk and relied upon their senses for this observation. The Eighth Circuit decided *White* after *Jardines* and *United States v. Burston*,

16

806 F.3d 1123 (8th Cir. 2015), two cases on which Mr. Toney relies (Dkt. No. 52-1, at 2–3). Further, the Eighth Circuit decided *White* months prior to the November 7, 2019, search at issue. Given that, the Court determines that the officers acted in objectively reasonable reliance on what they reasonably believed was binding Eighth Circuit precedent in taking the actions they did. *See United States v. Davis*, 760 F.3d 901, 902-04 (8th Cir. 2014) (applying the *Leon* good faith exception when the warrant was based on evidence obtained through a Fourth Amendment violation if "the detectives' prewarrant conduct [was] close enough to the line of validity to make the officers' belief in the validity of the warrant objectively reasonable."). In this Court's view, that reasonable reliance on *White* is not vitiated by the conduct Officer Krogman's Affidavit describes as sticking a nose up to the crease of the door and smelling.

As a result, suppression is not appropriate. *See Davis v. United States*, 564 U.S. 229 (2011). Therefore, assuming without deciding for purposes of resolving the motion to suppress only that the warrant executed November 7, 2019, lacked probable cause and was based upon a Fourth Amendment violation, the *Leon* exception applies, and exclusion of evidence seized pursuant to the November 7, 2019, search warrant is not appropriate.

### IV. Conclusion

For all of the foregoing reasons, the Court denies Mr. Toney's motion to suppress (Dkt. No. 52-1).

It is so ordered this 8th day of July, 2022.

*Kristine G. Baker*
Kristine G. Baker
United States District Judge